UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| LIONEL C. PEPIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Docket No. 07-CV-33-P-S |
| WAL-MART STORES, INC., | ) |
| | ) |
| Defendant. | ) |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law. (Docket # 12.) Through this Motion, Defendant Wal-Mart Stores, Inc. ("Wal-Mart") seeks summary judgment on Plaintiff's Complaint (Docket # 1-2). After reviewing the parties' submissions and for the reasons briefly described below, the Court DENIES the Motion.

**I.     STANDARD OF REVIEW**

Generally, a party is entitled to summary judgment if, on the record before the Court, it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A "material fact" is one that has "the potential to affect the outcome of the suit under the applicable law." Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the Court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. Santoni v. Potter, 369 F.3d 594, 598 (1st Cir. 2004). Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmoving party must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e).

## II.     BACKGROUND

On November 21, 2005, Plaintiff Lionel Pepin arrived at the Wal-Mart store in Auburn, Maine with his wife. It was three days before Thanksgiving and the store was busy. Pepin is 76 years old, and upon arriving at Wal-Mart, decided to use a motorized shopping cart to conduct his shopping. After entering the store and obtaining the cart, Pepin and his wife parted ways to shop separately. Pepin then headed through the vegetable and meat departments to the paper products aisle.

On his way to the paper products area and in an aisle of the meat department, Pepin observed a Wal-Mart employee, Robert Dyer,[1] standing between a pallet of boxes and a frozen meat case about forty to fifty feet down the aisle. Dyer was unloading

---

[1]     Dyer is the manager of the meat department at the Auburn Wal-Mart. Dyer obtained his job at Wal-Mart based on his experience: he had worked in meat departments at grocery stores since 1994. Dyer has worked in the meat department at Wal-Mart since 2001 and as manager since 2002. In the course of his employment, Dyer has unloaded turkey pallets for many years. However, Dyer never had any training at Wal-Mart about how to load and unload frozen turkeys.

frozen turkeys from boxes on a pallet into a meat case. Before Dyer began unloading the turkeys, the boxes on the pallet were stacked about waist high with four boxes per layer and four or five layers high.[2] Dyer emptied the pallet by unloading turkeys individually from the boxes on the side of the pallet closest to the meat case and stacking the empty boxes on top of the full boxes on the other side of the pallet, that closest to where the customers would walk.

At the time of the incident, Dyer was still working on unloading the side of the pallet closest to the freezer. He had placed four or five empty boxes on the side of the pallet closest to the aisle. Based on what he had done in the past, Dyer estimated that he stacked the empty boxes in two stacks: two empty boxes on top of each other and three empty boxes on top of each other. Pepin believed that just before the incident, the boxes were stacked six or seven feet high. At that time, there was between four and six feet of space between the pallet and the other side of the aisle.

As Pepin proceeded down the aisle, the last time that he looked at the pallet before the incident, he was ten to fifteen feet away. Instead of looking at the pallet, he was looking ahead at customers.[3] He did not see any wobbling boxes or any other indication that the boxes were about to fall or were unstable. At that point, Dyer bent down behind the boxes on the pallet. As Pepin was almost broadside to the pallet, he felt

---

[2] Dyer brought the pallet of turkeys to the meat case using a pallet jack, which remained under the pallet while he unloaded it. Dyer claims that there was no risk that the pallet would become unsteady as one side is unloaded because the pallet sits flat on the floor and there is no way for it to move. Nonetheless, Dyer did not conduct a "bump test" on the pallet because the boxes were fairly heavy and therefore not likely to fall. A bump test is when a pallet is on the sales floor and a Wal-Mart associate bumps it with his or her hip. If anything falls off and the pallet is unstable, the associate would restack the pallet so that nothing falls off.

[3] From the time Pepin first observed the pallet through the time of the incident, he did not see any customers between himself and the pallet. Right after the incident, the closest customers were twenty to thirty feet away.

something hit the top of his head and the back of his neck. Pepin is not sure whether he was hit by empty boxes, boxes with frozen turkeys in them, frozen turkeys or a combination. As Dyer turned around to get a turkey, he saw boxes all over the floor and one box in the basket in the front of Pepin's cart. Dyer took the box off the cart and picked the boxes off the floor so that customers could get by.

After the incident, Pepin believes that he became unconscious. Although Pepin does not remember, Dyer apparently approached Pepin, asked if he was alright and apologized to him. Dyer remembers that Pepin stated that he was fine and that his arm was a little sore. Pepin then continued down the aisle. After Pepin left, Dyer finished unloading the pallet of turkeys, returned the pallet and empty boxes out back and then worked in the meat cases. Dyer did not report the accident to anyone because Pepin had said that he was fine.

Pepin apparently regained consciousness and then continued towards the paper products aisle. When he neared the paper products aisle at the back of the store, he stopped his cart, thought about what had happened and felt discomfort in his left arm or shoulder and his neck. He stated that "he felt like something bad had happened, like someone had hit or punched him."

Pepin then drove his cart from the paper products aisle to the front of the store and spoke with a customer service employee. Pepin told the employee that he had been hit by boxes that fell on him, and a manager was summoned. Pepin filled out a written statement, and then he and the manager went to the meat department where they spoke with Dyer. Pepin stated that empty boxes had fallen on him but cannot remember whether he said at that point that frozen turkeys had also fallen on him.

About twenty-five minutes after the incident, an assistant manager found Dyer, told him that a customer had complained that turkeys had fallen on him and asked him to complete an incident report. Dyer completed the incident report and told the assistant manager that the only thing that had fallen was empty turkey boxes. Dyer failed to mention in the incident report that Pepin had stated that his arm was sore.[4]

After Pepin left the grocery area, he found his wife and told her what had happened. He cannot remember whether he told her that frozen turkeys had fallen on him. Pepin went to St. Mary's emergency room three hours after returning home. Two weeks after the accident, Pepin had MRIs conducted of his left shoulder and his neck. He had surgery for a complete tear of the rotator cuff in his left shoulder, and he received two series of cervical facet blocks for his neck pain.

On February 1, 2007, Plaintiff filed a Complaint in the Androscoggin Superior Court in the state of Maine naming Wal-Mart as Defendant. The Complaint asserts a single cause of action for negligence.[5] On March 5, 2007, Wal-Mart removed the case to federal court (Docket # 1). On October 12, 2007, Wal-Mart moved for summary judgment (Docket # 12). In addition, Wal-Mart has filed a Motion in Limine to Limit the Scope of Plaintiff's Medical Expert Evidence and Incorporated Memorandum of Law (Docket # 13). The Court will address each motion in turn.

---

[4] There is a genuine issue of material fact as to whether Dyer was the only employee in the area at the time of the incident.

[5] The case is framed as one of negligence and Plaintiff does not state otherwise in Plaintiff's Memorandum in Opposition to the Defendant's Motion for Summary Judgment (Docket # 31).

### III. DISCUSSION

### A. Motion for Summary Judgment

Plaintiff asserts a single claim against Wal-Mart: negligence. To establish a cause of action for negligence in Maine, a plaintiff must show "each element of negligence, namely, (1) a duty owed [the plaintiff by the defendant], (2) [defendant's] breach of that duty, and (3) injury of [plaintiff] by that breach." Parker v. Harriman, 516 A.2d 549, 550 (Me. 1986); see also Gayer v. Bath Iron Works Corp., 687 A.2d 617, 621 (Me. 1996). Defendant first contests that Wal-Mart owed a duty to Plaintiff and that it breached any duty owed to Plaintiff.

The existence of a duty is a question of law to be determined by the Court. Alexander v. Mitchell, 930 A.2d 1016, 1020 (Me. 2007). "[A]n owner or occupier of land owes [a] duty of reasonable care in all the circumstances to all persons lawfully on the land." Poulin v. Colby College, 402 A.2d 846, 851 (Me. 1979); see also Marcoux v. Parker Hannifin/Nichols Portland Div., 881 A.2d 1138, 1146 n.4 (Me. 2005) (noting that "the duty owed an invitee [is] reasonable care in providing reasonably safe premises for their use"). In short, Defendant Wal-Mart unquestionably owed a duty to Pepin to exercise reasonable care to keep its premises reasonably safe.

In opposing Defendant's Motion for Summary Judgment, Pepin relies upon the doctrine of res ipsa loquitur. "The maxim of res ipsa loquitur 'the thing itself speaks' might, in practice, be translated, 'the accident spells negligence.'" Pratt v. Freese's, Inc., 438 A.2d 901, 903 (Me. 1981) (quoting Stodder v. Coca-Cola Bottling Plants, Inc., 48 A.2d 622, 624 (Me. 1946)).

> The doctrine of res ipsa loquitor is applicable where (i) there has been an unexplained accident, (ii) the instrument that caused the injury was under

> the management or control of the defendant and (iii) in the ordinary course of events, the accident would not have happened absent negligence on the part of the defendant. If the plaintiff is able to produce evidence establishing each element of the doctrine, the burden of proof shifts to the defendant who must demonstrate the absence of negligence.

Wellington Assoc., Inc. v. Capital Fire Protection Co., 594 A.2d 1089, 1092 (Me. 1991) (internal citations omitted).

While it is true that "the mere fact that the accident occurred does not determine whether res ipsa loquitur may be applied," Parker, 516 A.2d at 551, Plaintiff's claim presents a classic res ipsa loquitur case. Resolving all reasonable inferences in favor of Plaintiff, the record on summary judgment supports that Plaintiff has satisfied his burden to produce evidence establishing each element of res ipsa loquitur.

First, there is an unexplained accident: empty turkey boxes fell off of a pallet and struck Pepin.[6] In countering the res ipsa loquitur argument, Defendant states: "Mr. Pepin does not know how this accident happened. He has no evidence that Wal-Mart was negligent." (Def.'s Reply to Pl.'s Mem. in Opp. to the Def.'s Mot. for Summ. J. ("Def.'s Reply") (Docket # 35) at 4.) While Defendant appears to argue that this lack of evidence is fatal to Pepin's attempt to survive summary judgment, these statements simply establish that Pepin indeed satisfies the "unexplained" portion of this first prong of the res ipsa loquitur doctrine.

Second, the boxes and pallet were under the management and control of Defendant Wal-Mart. Wal-Mart does not argue otherwise.

Third, in the ordinary course of events, this type of accident does not happen absent negligence. This is not a case where there are multiple reasonable causes for a

---

[6] There is a genuine issue of material fact as to whether the items that fell on Pepin also included turkeys or boxes with turkeys.

pipe to burst or where two independent automobiles collided. See, e.g., Sheltra v. Rochefort, 667 A.2d 868, 870 (Me. 1995) ("The injury to [plaintiff] occurred as a result of the impact of two cars bumping together. [Defendant] was not in control of both cars, and more importantly, the collision may have occurred without negligence on the part of either of the parties."); Wellington Assoc., Inc., 594 A.2d at 1092 ("[Plaintiff] presented no evidence to show that piping elbows are unlikely to burst absent negligence in their installation. Indeed, the record contains ample evidence indicating that frozen pipes could have caused the elbow to rupture."). Instead, the character of this accident, where a stack of seemingly stable boxes and/or frozen turkeys fell, is not the type of accident to occur absent negligence. See, e.g., Maroules v. Jumbo, Inc., 452 F.3d 639, 641 (7th Cir. 2006) ("Ordinarily we count on gravity to keep heavy items in place; and so when flour barrels, armchairs, and truck wheels become airborne we assume first that something has gone wrong. Such events, lawyers say, speak for themselves, or in Latin, "res ipsa loquitur," and the blame for any resulting injury can be imputed to the person who had control of the item before it became a dangerous projectile.")

Defendant attempts to offer alternative explanations for how this accident may have occurred; all of which involve the boxes falling as a result of Pepin first coming into contact with the pallet and/or boxes. Defendant's proffers, however, are mere speculation. On this record, Defendant lacks any evidentiary support beyond assumptions and conjecture. Defendant states: "Wal-Mart believes that the boxes fell off the pallet when Mr. Pepin struck them with his arm because he believed he was too close to the pallet. . . . In all likelihood, Mr. Pepin realized when he finally did look back at the pallet that he was too close to it and put his arm out to avoid striking the pallet, knocking

off the boxes. . . . [I]t is entirely possible that Mr. Pepin momentarily lost control of the cart, striking the pallet and causing the boxes to fall." (Def.'s Reply at 5.) Simply stated, Defendant has submitted no admissible evidence to support any of its theories.[7]

On the record at summary judgment, Plaintiff has satisfied his burden to produce evidence showing each element of res ipsa loquitur. Conversely, Defendant has failed to demonstrate the absence of negligence. Therefore, Defendant is not entitled to judgment as a matter of law, and the motion for summary judgment is denied.

**B.    Motion in Limine**

Wal-Mart has filed a Motion in Limine to Limit the Scope of Plaintiff's Medical Expert Evidence and Incorporated Memorandum of Law (Docket # 13). Plaintiff's expert witness designation names several of Pepin's treatment providers as experts. (Docket # 13-3.) Through the Motion in Limine, Wal-Mart moves to limit the scope of Plaintiff's medical expert evidence to addressing Pepin's medical condition and the provider's treatment and exclude any evidence of causation. Specifically, Wal-Mart argues that because Plaintiff's medical experts rely on Pepin's representations that frozen turkeys fell on him and Pepin cannot establish that any frozen turkeys were involved, the experts lack the necessary foundation for their opinions. Nonetheless, as indicated above, a genuine issue of material fact exists as to precisely what fell on Pepin. Furthermore, "[w]hen the factual underpinning of an expert's opinion is weak, it is a matter affecting the weight and credibility of the testimony – a question to be resolved by the jury." Int'l Adhesive Coating Co. v. Bolton Emerson Int'l, Inc., 851 F.2d 540, 545 (1st Cir. 1988); see also Crowe v. Marchand, 506 F.3d 13, 18 (1st Cir. 2007). For these reasons,

---

[7]    Defendant offers that Dyer believes that Pepin knocked the boxes off the pallet. Defendant's Statement of Facts as to which there is no Genuine Issue to be Tried, however, states, "Dyer assumes that Pepin knocked the boxes off the pallet as he went by . . . ." (Docket # 14 at 8.)

Defendant's Motion in Limine is denied without prejudice. Defendant is free to raise any applicable objections at trial.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is DENIED (Docket # 12), and Defendant's Motion in Limine is DENIED WITHOUT PREJUDICE (Docket # 13).

**SO ORDERED.**

/s/ George Z. Singal
Chief United States District Judge

Dated this 1st day of April, 2008.